# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DAIVIONTAE TYRELL JOHNSON,<br><br>      Plaintiff,<br><br>v.<br><br>MEGAN LEBERAK, ANN YORK, ALLISON PACH, KATARYNA KRAINYK, and TONYA WESNER,<br><br>      Defendants. | Case No. 24-CV-149-JPS<br><br><br><br>**ORDER** |

  Plaintiff, Daviontae Tyrell Johnson, a prisoner, brings this action under 42 U.S.C. § 1983 pro se. ECF No. 1. On April 3, 2024, pursuant to 28 U.S.C. § 1915A, the Court screened his complaint and identified which claims may proceed. ECF No. 9. Plaintiff currently has numerous motions pending before the court, including a motion for a transfer, motions for a preliminary injunction, motions to compel, a motion for an extension of time, a motion for a temporary restraining order, motions to appoint counsel, motions to submit new evidence/discovery and preserve evidence, and a motion to submit information. ECF Nos. 24, 25, 27, 28, 32, 33, 34, 38, 39, 40, 41, 42, 51, 61, 62, 66.

  After seeking an extension of time to file a consolidated response, Defendants filed a consolidated response on January 31, 2025. ECF No. 54. On February 6, 2025, Plaintiff filed a notice of change of address to indicate that he is currently incarcerated at Green Bay Correctional Institution ("GBCI"). ECF No. 58. Prior to any analysis, the Court notes that Plaintiff's

duplicative filings have muddied the waters and slowed down the resolution of his pending issues. In the future, Plaintiff is advised to wait for the Court's decisions rather than filing duplicative motions.

First, the Court will deny as moot Plaintiff's motions for a transfer and preliminary relief because he is no longer incarcerated at Waupun Correctional Institution. Plaintiff had previously indicated he had difficulty obtaining his property and feared for his safety at Waupun due to staff harassment and not receiving adequate medical care. ECF Nos. 24, 40. In light of his transfer to GBCI, Plaintiff's requests for preliminary relief are now moot because nothing suggests that he faces a realistic possibility that the prison's transfer decision will be revoked or that he will be returned to Waupun. *See Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) ("[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot."); *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) ("If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred."). As such, the Court will deny Plaintiff's requests for a transfer and preliminary relief as moot.

Second, the Court will deny Plaintiff's motions to compel without prejudice. Civil Local Rule 37 requires that all motions to compel disclosure or discovery pursuant to Federal Rules of Civil Procedure 26 through 37 must be accompanied by a written certification by the movant that, after the movant in good faith has conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action, the parties are unable to reach an accord. The statement must recite the date and time of the conference or conferences

and the names of all parties participating in the conference or conferences. Civil L.R. 37.

Here, Plaintiff has failed to comply with the meet and confer requirement. As such, the Court is obliged to deny Plaintiff's motions to compel discovery without prejudice. The Court will also deny as moot Plaintiff's motion for an extension of time to support his motion to compel because he failed to meet and confer. Moreover, based on Defendants' consolidated response, Defendants indicate that they have in fact responded to Plaintiff's outstanding discovery requests. *See* ECF No. 54. This situation exemplifies the importance of the meet and confer requirement for discovery disputes; most discovery issues can and should be resolved without Court involvement. To the extent that Plaintiff still believes he has not received necessary discovery, he may renew his motion if/when he complies with the meet and confer requirement. In the meantime, the Court strongly urges Defendants to work collaboratively with Plaintiff in order to work through any discovery issues going forward.

Third, the Court will deny, without prejudice, Plaintiff's motions to appoint counsel. As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), a "court may request an attorney to represent any person unable to afford counsel." A court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether

to appoint counsel in a particular case is left to a court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

While framed in terms of a plaintiff's capacity to litigate, this discretion must also be informed by the realities of recruiting counsel in this District. When a court recruits a lawyer to represent a pro se party, the lawyer takes the case pro bono. Unlike a lawyer appointed to represent a criminal defendant during his prosecution, who is paid by the government for his work, an attorney who takes a prisoner's civil case pro bono has no promise of compensation.

It is difficult to convince local lawyers to take such cases. Unlike other districts in this Circuit, *see, e.g.*, L.R. 83.35 (N.D. Ill.), the Eastern District of Wisconsin does not employ an involuntary appointment system for lawyers admitted to practice in the District. Instead, the District relies on the willingness of lawyers to sign up for the Pro Bono Attorney Panel and, once there, accept appointments as needed. *See* Pro Bono Program, *available at*: http://www.wied.uscourts.gov/pro-bono-program.

The District is grateful to the lawyers who participate in the Pro Bono Program, but there are never enough volunteers, and those who do volunteer rarely take more than one or two cases a year. This is understandable, as many are already busy attending to fee-paying clients. Although the Pro Bono Program does provide for payment of certain litigation expenses, it does not directly compensate a lawyer for his or her time. Participants may seek attorney's fees when permitted by statute, such as in successful § 1983 cases, but they will otherwise go unpaid. The small pool of attorneys available to this District for pro bono appointments stands in stark contrast to that of the Court of Appeals, which regularly recruits counsel from across the nation to represent pro se plaintiffs on appeal. *See,*

*e.g.*, *James*, 889 F.3d at 323 (appointing counsel from Washington, D.C. to represent the pro se appellant); *McCaa*, 893 F.3d at 1029 (same).

Against the thin ranks of ready and willing counsel rises the overwhelming tide of pro se prisoner litigation in this District.[1] In 2010, approximately 300 civil actions were filed by prisoner litigants. More than half sought habeas corpus relief, while the remainder were § 1983 actions alleging violations of constitutional rights. Since then, the number of habeas corpus cases has remained largely steady at around 130 per year, while the volume of § 1983 lawsuits has skyrocketed. About 499 § 1983 actions were filed in 2022, and another 571 in 2023—each significantly more than the entirety of the District's civil prisoner filings from years earlier. In 2024, § 1983 actions numbered 582. All told, well over a third of the District's new case filings are submitted by unrepresented inmates. On its best day, this District has the resources to realistically consider appointment of counsel in only a tiny fraction of these cases.

Finally, it must be remembered that, when a court determines that counsel recruitment is appropriate, it can take months to locate a willing lawyer. This delay works to the detriment of all parties and contravenes Congress's instruction in Federal Rule of Civil Procedure 1 that district

---

[1]Although non-prisoner pro se litigants may also be considered for the appointment of counsel under § 1915, the Court does not address that set of pro se litigants here for a few reasons. First, the volume of non-prisoner pro se litigation is miniscule compared to that brought by prisoners. Second, prisoners are much more likely to request the appointment of counsel. Paradoxically, prisoners are usually far better equipped to litigate than non-prisoners, as prisoners have access to electronic filing, institution law libraries, and fellow prisoners who offer services as "jailhouse lawyers." Yet, learning a little of the legal system means that prisoners know they can request the appointment of pro bono counsel, which they do with regularity.

courts must endeavor to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, looming large over each request for counsel are a court's ever-more-limited time and resources.

With these considerations in mind, the Court returns to the question presented: whether counsel can and should be recruited to represent Plaintiff at this stage in this case. First, a court asks whether the litigant has made "reasonable" efforts to obtain his own representation. *Pruitt*, 503 F.3d at 655; *Jackson v. County of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). It is a question not often litigated; many district court judges either overlook arguably unreasonable efforts at obtaining counsel, or they impose eminently practical requirements such as the submission of evidence demonstrating that the prisoner has tried and failed to secure representation from several lawyers. *See, e.g.*, *Kyle v. Feather*, No. 09-cv-90-bbc, 2009 WL 2474627, at *1 (W.D. Wis. Aug. 11, 2009).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a § 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call his work complete. This cannot be. The purpose of the reasonable-efforts requirement is to ensure that if a court and private lawyers must expend scarce resources to provide counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself. To fulfill this duty, a pro se prisoner should reach out to lawyers whose areas of practice suggest that they might consider taking his case. If he learns that some of the lawyers he has contacted do not, he should reach out to others before he concludes that no one will help him.

Plaintiff provides evidence that he has attempted to secure counsel in this matter. He includes copies of the rejection letters from law firms that he received in response to his request. ECF No. 61-1. The Court is therefore satisfied that Plaintiff has met the first *Pruitt* factor to attempt to secure counsel on his own.

Plaintiff's request must also succeed on the second *Pruitt* question: whether the difficulty of the case exceeds his capacity to coherently present it. This assessment must be made in light of the particular capabilities and circumstances presented by each pro se litigant. *James*, 889 F.3d at 326–27. The Court of Appeals explains:

> The second step is itself grounded in a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself. The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand. Ultimately, the question is not whether a lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant. Rather, the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself. Notably, this inquiry extends beyond the trial stage of the proceedings. The relevant concern is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty. This includes all of the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.

*Id.* (citations and quotations omitted). While a court need not address every concern raised in a motion for appointment of counsel, it must address

"those that bear directly" on the individual's capacity to litigate his case. *McCaa*, 893 F.3d at 1032.

The balancing contemplated in the second *Pruitt* step must be done against the backdrop that district courts cannot be expected to appoint counsel in circumstances which are common to all or many prisoners. *See Bracey v. Grondin*, 712 F.3d 1012, 1017–18 (7th Cir. 2013); *Pruitt*, 503 F.3d 647, 656 (observing that the Seventh Circuit has "resisted laying down categorical rules regarding recruitment of counsel in particular types of cases"); *Harper v. Bolton*, 57 F. Supp. 3d 889, 893 (N.D. Ill. 2014). Doing so would place untenable burdens on court resources. It would also turn the discretion of § 1915(e)(2) on its head, making appointment of counsel the rule rather than the exception.

Several pronouncements from the Court of Appeals appear to be in tension with this principle. First, the Seventh Circuit notes that "complexity increases and competence decreases as a case proceeds to the advanced phases of litigation." *James*, 889 F.3d at 327. It deems the "[a]dvanced phases" to include those from discovery onward. *Id.*; *McCaa*, 893 F.3d at 1032. But nearly every prisoner case proceeds to discovery, as the district court applies exceedingly lenient review during initial screening.

Second, the Seventh Circuit instructs that district courts should evaluate a prisoner's competency irrespective of the involvement of a "jailhouse lawyer." *McCaa*, 893 F.3d at 1033; *Walker v. Price*, No. 17-1345, 2018 WL 3967298, at *5 (7th Cir. Aug. 20, 2018). How courts should do this is not clear. A court rarely knows whether a filing was prepared by the plaintiff or someone helping him. And if a court does know that the plaintiff is receiving help, how can it assess his ability to litigate without knowing which portions of the filings are his work, and which come from the

Page 8 of 12

jailhouse lawyer? In *Walker*, the court determined that the inmate's work product decreased in quality after his jailhouse lawyer was transferred to another prison. 2018 WL 3967298, at *6. Yet a savvy prisoner, looking to secure counsel for himself, could do this on purpose, crafting his filings to downplay his own litigation capabilities. A court would have no way to assess whether the inmate is sandbagging it.

Finally, the Court of Appeals indicates that claims involving the state of mind of the defendant, such as those involving deliberate indifference, are particularly complex. *James*, 889 F.3d at 327–28; *McCaa*, 893 F.3d at 1032. Yet a government official's culpable mental state is the foundation for most constitutional claims. Indeed, it is often the defining characteristic that sets § 1983 claims apart from their state-law tort analogues. Deliberate indifference is essential to nearly all claims of cruel and unusual punishment, excessive force, mistreatment of medical needs, and First Amendment and due process violations. *See Kingsley v. Henderson*, 135 S. Ct. 2466, 2473 (2015); *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017); *Milton v. Slota*, 697 F. App'x 462, 464 (7th Cir. 2017) ("*[N]egligently* inflicted harm does not amount to a constitutional violation.") (emphasis in original). Taken together, these claims comprise the vast majority of prisoner litigation in this District. If state-of-mind issues are generally beyond the ability of most pro se litigants to prove, then a court likely would need to appoint counsel in nearly every prisoner case. This is plainly impossible.

The guiding rule has always been that appointment of counsel is the exception rather than the rule in pro se prisoner litigation. Yet a confluence of all-too-common circumstances—discovery, jailhouse lawyers, and

claims concerning state of mind—militate in favor of the appointment of counsel. As the list of reasons to appoint counsel grows, the reasons not to do so shrink. This District's resources have not kept pace.

Against this backdrop, the Court finds that Plaintiff has not presented sufficient evidence and argument showing that he cannot litigate or try this matter competently on his own. In his motion and accompanying documents, Plaintiff indicates that he is not mentally capable to litigate his case and has a learning disability. ECF Nos. 34, 61, 66.

It is true, as Plaintiff intuits, that a lawyer would be helpful in navigating the legal system; trained attorneys are of course better positioned to successfully litigate cases. But Plaintiff's lack of legal training and education brings him in line with practically every other prisoner or former prisoner litigating in this Court. Plaintiff has clearly presented his claims to the Court and has advocated to get responses to his discovery requests. Ignorance of the law or court procedure is generally not a qualifying reason for appointment of counsel. Plaintiff has not demonstrated that his case is exceptional to require counsel. As such, the Court will deny Plaintiff's motions to appoint counsel without prejudice. Plaintiff may renew his motions at a later time in the case if applicable.

Finally, the Court will deny as moot Plaintiff's motions to preserve evidence and to submit information. Plaintiff has filed numerous documents with the Court, and they are now part of the record. To the extent that Plaintiff needs to refer to these documents going forward in this case, he may do so. Going forward, Plaintiff should not file his requests as motions; he may simply submit his documents to the Court. The Court reminds Plaintiff, however, that he will need to specifically direct the Court

to these documents if he wishes the Court to rely on them in support of his legal arguments going forward.

To the extent that Plaintiff seeks to preserve evidence not yet in Plaintiff's possession, the Court would deny this type of request as well. Defendants' obligation to preserve evidence likely was triggered by Plaintiff filing his inmate complaint regarding this incident, and in any event, would certainly be triggered when it received the screening order. *See Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) (noting that a party's duty to preserve evidence is triggered when it knows or should have known that litigation is imminent). Plaintiff may request evidence from Defendants in the normal course of discovery.

Accordingly,

**IT IS ORDERED** that Plaintiff's motions for a transfer and for preliminary relief, ECF Nos. 24, 33, 40, be and the same are hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motions to compel, ECF Nos. 25, 27, 28, 39, be and the same are hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff's motions to appoint counsel, ECF Nos. 34, 61, 66, be and the same are hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for an extension of time ECF No. 32, be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that Plaintiff's motions to preserve evidence and to submit information, ECF Nos. 38, 41, 42, 51, 62, be and the same are hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 26th day of March, 2025.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge